# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF ARKANSAS
# HOT SPRINGS DIVISION

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**DEC 0 9 2016**

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

**HCAFranchise Corporation**, a Nevada corporation,

Plaintiff,

v.

Case No. 16-6126

**Southern Home Care Assistance Inc.,** an Arkansas corporation, **Zachary F. Smith**, an individual, **Lindsey R. Smith**, an individual, jointly and severely,

Defendants.

---

HYDEN, MIRON & FOSTER, PLLC
By:    Steven Napper (AR Bar No. 75096)
200 Louisiana Street
Little Rock, Arkansas 72201
Phone: (501) 376-8222 | Fax: (501) 376-7047
Email: Steve.Napper@HMFLaw.net

HOWARD & HOWARD ATTORNEYS PLLC
By:    Dean W. Amburn (MI Bar No. P46427;
       *Pro Hac Vice* Pending)
450 West Fourth Street
Royal Oak, Michigan 48067-2557
Phone: (248) 645-1483 | Fax: (248) 723-1568
Email: DAmburn@HowardandHoward.com

*Attorneys for Plaintiff*

---

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF
## WITH JURY DEMAND

Plaintiff HCAFranchise Corporation, files this action against Defendants

Southern Home Care Assistance Inc., an Arkansas corporation, Zachary F. Smith,

an individual, and Lindsey R. Smith, an individual, jointly and severely, and alleges:

## NATURE OF THE CASE

1.      These claims arise between a franchisor HCAFranchise Corporation ("HCA"), its former franchisee, Southern Home Care Assistance Inc., including the former franchisee owners Zachary F. and Lindsey R. Smith (collectively "the SHCA Parties" or "Defendants").   The SHCA Parties were terminated as franchisees after they defaulted on their obligations under a Franchise Agreement ("FA") with HCA by not paying royalties and by engaging in various other misconduct.  The SHCA Parties were given an opportunity to cure the defaults but failed to do so within the time permitted.   Notwithstanding the termination, the SHCA Parties are continuing to engage in business operations as though they are HCA's franchisee and are engaged in other illegal activities, including: not paying past or current royalties owed to HCA; unlawfully using HCA's trademarks and confidential business information; and unlawfully competing with HCA.

2.      As a result of the SHCA Parties' material breaches of the FA and other unlawful activities, HCA brings its claims including: injunctive relief; misappropriation of trade secrets; Lanham Act violations; breach of contract; and interference with contractual relations.

3.      The SHCA Parties' activities are causing immediate and irreparable harm to HCA for which there are no adequate remedy at law.   Therefore, HCA seeks an injunction against the unauthorized and improper use of HCA's trademarks and confidential information along with preventing the SHCA Parties from continuing to unlawfully compete with HCA.   The SHCA Parties' unlawful competition is also interfering with a new franchisee of HCA that has been assigned the same territory previously assigned to the SHCA Parties.

## PARTIES

4.      Plaintiff HCAFranchise Corporation is and was at all times related hereto a corporation organized and existing under the laws of the State of Nevada with its principal place of business located at 525 University Avenue, Suite 605, Palo Alto, California 94301.

5.      Upon information and belief, Defendant Southern Home Care Assistance Inc. is and was at all times related hereto a corporation organized and existing under the laws of the State of Arkansas with its principal place of business located at 2836 Malvern Avenue, Suite G, Hot Springs, Arkansas 71901.

6.      Upon information and belief, Defendant Zachary F. Smith is an individual who is a citizen of Arkansas and resides at 298 Galaxy Street, Hot Springs, Arizona 71913.

7.      Upon information and belief, Defendant Lindsey R. Smith is an individual who is a citizen of Arkansas and resides at 298 Galaxy Street, Hot Springs, Arizona 71913.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1121, and 18 U.S.C. § 1836(c).

9.      This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

10.     This Court has pendent jurisdiction over any state law claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), as a substantial part of the events giving rise to the claims occurred in this judicial District.

## ALLEGATIONS COMMON TO ALL COUNTS

12.     HCA is the franchisor of the Home Care Assistance 1-866-4-LiveIn® Franchise System.

13.     HCA owns and operates the website www.HomeCareAssistance.com.

14.     On its website HCA states its mission:

> We provide older adults with quality care that enables them to live happier, healthier lives at home. Our services are distinguished by the caliber of our caregivers, the responsiveness of our staff and our expertise in home

4

care. We embrace a positive, balanced approach to aging centered on the evolving needs of older adults.

15.     In order to accomplish its mission HCA works with a national chain of franchisees that offer clients in need of homecare services, particularly elderly adults, with caregivers that meet with the clients at their homes.

16.     Each HCA franchisee is obligated to fulfill important responsibilities including making sure that each client's home care needs are being met and making sure that the assigned caregivers are qualified.

17.     In June 2008, HCA entered into a Franchise Agreement ("FA") with Trent Jones.  A true, accurate, and authentic copy of the FA is attached hereto and incorporated herein by reference as **Exhibit A**.

18.     The FA authorizes the franchisee to offer home care services to clients within a limited operating territory within the state of Arkansas.  *See* **Exhibit A**, § 5.1.

19.     In May 2011, the SHCA Parties bought out Mr. Jones' franchise and assumed the FA.

20.     Shortly thereafter, the SHCA Parties took over the franchise and begin performing according to the FA.

21.     The SHCA Parties established a franchise office located at 2836 Malvern Avenue, Suite G, Hot Springs, Arkansas 71901.

22.     Pursuant to the FA the SHCA Parties were obligated to pay royalties to HCA based on gross sales revenue. *See* **Exhibit A**, § 6.2.

23.     Upon information and belief, the SHCA Parties initially performed substantially according to the FA and made royalty payments to HCA.

24.     However, beginning in and around the summer of 2015, the SHCA Parties' behavior began to change. The SHCA Parties added Medicaid to their HCA home care business and completely shielded it from HCA so the SHCA Parties could avoid paying HCA royalties on the Medicaid revenue.

25.     In the summer of 2016, the SHCA Parties began making late royalty payments or entirely missed required payments on their core business as well. The SHCA Parties did not provide any legitimate reason for making the late royalty payments or entirely missing payments.

26.     Failure to timely make royalty payment is a default of the FA. *See* **Exhibit A**, §§ 18.1, 18.2.

27.     In August 2016, the SHCA Parties formed a competing business, Hidden Hills Care Home, Inc., and began diverting HCA customers to the newly formed business. A true and accurate copy of the Hidden Hills Care Home, Inc. record with the Arkansas Secretary of State is attached hereto as **Exhibit B**. A true and accurate copy of the public Facebook business listing for Hidden Hills Care Home, Inc. is attached hereto as **Exhibit C**.

6

28.     It is a violation of the FA for the SHCA Parties to directly or indirectly compete with HCA during the term of the FA, and to divert customers away from HCA.   *See* **Exhibit A,** § 12.1.   The SHCA Parties agreed and acknowledged in the FA that any in-term competition would cause HCA irreparable harm and would entitle HCA to an injunction against the SHCA Parties to enjoin the SHCA Parties from the prohibited in-term competition.   *See* **Exhibit A,** § 12.3.

29.     As a result of the SHCA Parties' defaults and failures to comply with their obligations pursuant to the FA, on September 22, 2016, HCA sent the SHCA Parties a Notice of Default of Franchise Agreement and Opportunity to Cure (the "First Default Notice").   The SHCA Parties never responded to the letter and did not cure the default.   A true, accurate, and authentic copy of the First Default Notice is attached hereto as **Exhibit D.**

30.     On September 28, 2016, HCA sent the SHCA Parties another Notice Default of Franchise Agreement and Opportunity to Cure (the "Second Default Notice").   The SHCA Parties never responded to the letter and did not cure the default.   A true, accurate, and authentic copy of the Second Default Notice is attached hereto as **Exhibit E.**

31.     In the Second Default Notice, HCA raised as an additional default the SHCA Parties' failure to report all received gross revenue including payments

7

received from the Arkansas Department of Human Services Division of Aging and Adult Services (a.k.a. the Medicaid revenue). **Exhibit E**, p. 2.

32.      Because the SHCA Parties failed to fulfill their obligations pursuant to the FA and continued be in default, on October 12, 2016, HCA sent the SHCA Parties a Notice of Termination of Franchise Agreement (the "Termination Notice").   A true, accurate, and authentic copy of the Termination Notice is attached hereto as **Exhibit F**.

33.      In addition to declaring termination of the FA for good cause, including failure to cure, the Termination Notice also informed the SHCA Parties of HCA's rights and the SHCA Parties' post-termination obligations as set forth in the Termination Notice, including:

> Because the Agreement has been terminated, you have no further rights to use the Home Care Assistance 1-866-4-LiveIn® Marks and System.   You must, beginning immediately and in the future, abide by all post-termination obligations set forth in the Agreement, which include but are not limited to those set forth in Section 19.   The post-termination consequences and obligations include, but are not limited to:
>
> (1)      You are no longer licensed to operate either Franchised Business licensed under the Agreement.   You are not permitted to use HCA's Marks, System, Operating Manual, or methods of operation.
>
> (2)      You must comply with the covenant not to compete in your Agreement, which states that, for a period of two (2) years after termination you will

not, either directly or indirectly, own, maintain, engage in, consult with or have any interest in any in-home assisted living business or any service business that is the same as or similar to that which was licensed to you offer under the Agreement, either within twenty (20) miles of the Location of your Franchised Business or within twenty (20) miles of any other Home Care Assistance 1-866-4-LiveIn® business.

(3)     You must immediately cease to use, in any manner whatsoever, the name "Home Care Assistance 1-866-4-LiveIn®" and any forms, manuals, slogans, signs, etched glass, marks, symbols or devices used in connection with the operation of your Franchised Businesses.

(4)     You must promptly notify the telephone company and listing agencies of the termination or expiration of your right to use all telephone numbers of the Franchised Businesses and all classified and other directory listings of the Franchised Businesses, and assign to HCA or its designee the telephone numbers used in the operation of the Franchised Businesses.

(5)     If HCA has authorized you to use the Marks, or any of them in connection with the Internet, any website, or e-mail address, you must assign to HCA or its designate all of your right, title and interest in any Internet websites or web pages, e-mail addresses, social media identities, domain name listings and registrations which contain the Marks, or any of them, in whole or in part, and you must notify Verisign (Network Solutions), register.com, or other applicable domain name registrar and all listing agencies of the termination of your right to use any domain name, web page and other Internet device associated with HCA or the Franchised Business, and authorize and instruct their cancellation or transfer to HCA.

(6)  You must refrain from contacting any HCA franchisees, prospective HCA franchisees, or any of their employees or customers.

(7)  You must provide to HCA a complete list of all customers that you have serviced while you were a franchisee of HCA, and you must refrain from contacting any such customers.

(8)  You must turn over to HCA all manuals, records, files and any and all materials relating to the operation of the Franchised Businesses, including but not limited to any and all copies of all or part of the Operating Manual.

(9)  You must strictly comply with the Agreement's restrictions pertaining to the use of HCA's Confidential and Proprietary System Information, trade secrets and know-how as set forth in Section 14 of the Agreement.

(10)  You must take action to cancel the corporate names "Southern Home Care Assistance, Inc." and "Southern Home Care Assistance" and discontinue any use of the name "Home Care Assistance" or "Home Care Assistance 1-866-4-LiveIn®" in any manner whatsoever.

**Exhibit F**.

34.  The SHCA Parties did not comply with the Termination Notice including the Section 19 obligations set forth in the FA.

35.  The Termination Notice also provided the SHCA Parties with a Closing Checklist, requiring that the SHCA Parties to provide proof of compliance with the same within fifteen (15) days of the Notice of Termination.  **Exhibit F**, p. 7.

10

36.     The SHCA Parties failed to fill out or comply with the Closing Checklist.

37.     Upon information and belief, at the time of filing this complaint, the SHCA Parties are continuing to operate and holding themselves out to the public as if they are a franchisee of HCA but without making royalty payments or otherwise complying with the FA.

38.     Pursuant to the FA the SHCA Parties acknowledged that certain Confidential Information could be divulged to its employees where necessary. This included but was not limited to the identification of customers; the operating procedures of the HCA System; pricing policies and schedules; profitability, earnings and losses; and the services and products offered to customers. **Exhibit A** at § 14.4.

39.     At all times relevant hereto, HCA protected its proprietary and Confidential Information and trade secrets. Under Section 14 of the FA, the SHCA Parties acknowledged not only that they would have access to HCA's proprietary and Confidential Information and trade secrets, but that the SHCA Parties could not "effectively and efficiently operate" its business without those proprietary and Confidential Information and trade secrets. **Exhibit A** at § 14.4

40.     The FA further requires that the SHCA Parties will not use any Confidential Information for any purpose except as needed to run the franchised business pursuant to the FA. **Exhibit A** at § 14.2.

41.     Upon information and belief, the SHCA Parties are now using the Confidential Information for their own purposes including for reason of directly competing with HCA and the new franchisee assigned the same territory previously reserved for the SHCA Parties.

42.     The FA requires the SHCA Parties to cease the use of and return all HCA's Confidential Information and trade secrets to HCA. The FA provides, at § 19.1(g):

> The Franchisee shall immediately turn over to Franchisor all manuals, records, files, computer programs, software, customer lists, records, files, instructions, correspondence and brochures, and any and all other confidential and proprietary materials relating to the Operation of the Franchised Business that were provided to the Franchisee, or held by a third party on Franchisee's behalf, and the Franchisee shall retain no copy or record of any of the foregoing, with the exception only of the Franchisee's copy of this Agreement, correspondence between the parties and any other documents which the Franchisee reasonably needs for compliance with any provision of law.

**Exhibit A.**

43.     HCA is the owner of certain trade names, service marks, trademarks, logos, emblems, trade dress and other indicia of origin (hereinafter the "HCA Marks').

44.     The HCA Marks include U.S. Registration No. 3,304,464 for the word service mark Home Care Assistance 1-866-4-LiveIn registered on October 2, 2007. A true, accurate, accurate and authentic copy of the Certificate of Registration is attached as **Exhibit G**.

45.     The HCA Marks include U.S. Registration No. 4,076,495 for the design service mark HOME CARE ASSISTANCE 1-866-4-LIVEIN, as seen below, registered on December 27, 2011.  A true, accurate, and authentic copy of the Certificates of Registration is attached as **Exhibit H**.



46.     These service mark registrations remain valid, subsisting, and uncancelled.  As such, these registrations are, pursuant to 15 U.S.C. § 1115(b), conclusive evidence of HCA's exclusive right to use these marks in commerce. Further, Registration No. 3,304,464 is incontestable under 15 U.S.C. § 1065, as well as renewed.

47.     The HCA Marks include the currently pending U.S. Trademark Application Nos. 87/132,500 (word) and 87/250,688 (design) for the service mark HOME CARE ASSISTANCE filed on August 9, 2016 and November 29, 2016, respectively. A true, accurate, and authentic copy of the trademark applications are attached as **Exhibit I.**



48.     Through the HCA System, HCA markets, promotes, and provides services to its franchisees and consumers throughout the United States. In order to identify the origin of their services, HCA allows its franchisees to utilize the HCA Marks and to promote the HCA brand name.

49.     HCA has invested substantial effort over a period of time, including the expenditure of substantial funds, to develop goodwill in the HCA Marks to cause consumers throughout the United States to recognize the HCA Marks as distinctly designating HCA's services as originating with and from HCA.

50.     The value of the goodwill developed in the HCA Marks does not admit of precise monetary calculation.

51.     Since the FA was terminated, HCA has learned that the SHCA Parties have continued to operate and use the HCA Marks in the same location and

continue to engage in the same business of offering services to the public as when licensed as a HCA franchisee.

52.     Specifically, on November 22, 2016 and November 27, 2016, observations of the SHCA Parties' facility revealed that the HCA Marks were being used, including as signage on the exterior of the building.  True and accurate copies of photographs are attached hereto as **Exhibit J**.

53.     At the time of termination of the franchise, the SHCA Parties had a duty to immediately stop using the HCA Marks, as required by the FA. *See e.g.,* **Exhibit A**, § 19.1(d).

54.     After the October 12, 2016 Termination Notice, HCA learned of additional violations of the FA by the SHCA Parties that warranted immediate termination of the FA.  Specifically, HCA learned that the SHCA Parties had sold a subfranchise interest in the FA for a satellite office in Conway, Arkansas to Kyle McDaniel.  The SHCA Parties and Mr. McDaniel formed a new corporation, KZHC, Inc., on December 21, 2011 for the Conway satellite office.  A true and accurate copy of the KZHC, Inc. record with the Arkansas Secretary of State is attached hereto as **Exhibit K**.

55.     It is a breach of the FA for the SHCA Parties to sell or transfer any interest of the FA, including granting franchises to any other party.  **Exhibit A** §§ 2.3 and 21.4.

56.     Section 18(t) of the FA provides for immediate termination if the SHCA Parties "attempt to sell, transfer, hypothecate, pledge, or otherwise dispose of a Satellite Office separately from the Franchised Business." *See* **Exhibit A.**

57.     Upon learning of these additional violations of the FA by the SHCA Parties that warranted immediate termination of the FA, HCA sent a Supplemental Notice of Termination of Franchise Agreement on December 7, 2016.  A true and accurate copy of this Supplemental Notice of Termination of Franchise Agreement is attached hereto as **Exhibit L.**

## COUNT I – INJUNCTIVE RELIEF
## (BREACH OF THE COVENANT NOT TO COMPETE
## AND USE OF THE HCA MARKS)

58.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

59.     Section 12.2(a) of the FA requires that for a period of two (2) years after termination, the SHCA Parties will not divert "any customer of the business. . . to any competitive business." *See* **Exhibit A.**

60.     Section 12.2(b) of the FA requires that for a period of two (2) years after termination, the SHCA Parties will not, "[d]irectly or indirectly. . . have any interest in any business offering products or services the same or similar to those products and services offered as a part of the System described herein. . . ." *See* **Exhibit A.**

61.     After termination of the FA, the SHCA Parties have continued to operate the business in competition with HCA and use the HCA Marks.

62.     The SHCA Parties' actions are causing immediate and irreparable harm to HCA.

63.     HCA has no adequate remedy at law.

64.     Balancing the hardships of the SHCA Parties under these circumstances tips in favor of HCA because an injunction will prevent the SHCA Parties from continuing to breach the FA and use the HCA Marks.  Without an injunction, the SHCA Parties will continue to benefit from the use of HCA's Confidential Information and the HCA Marks at the expense of HCA.  The public's interest in fair competition and upholding contractual obligations favors HCA's position in seeking injunctive relief.

65.     Unless the SHCA Parties are temporarily, preliminarily and permanently enjoined from committing and continuing to commit the foregoing conduct, HCA will be irreparably harmed.

## COUNT II- LANHAM ACT VIOLATIONS AND INJUNCTIVE RELIEF (UNAUTHORIZED USE OF TRADEMARKS)

66.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

67.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that

> [A]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant. . . .

68.     Upon information and belief, after termination of the FA the SHCA Parties marketed and promoted the sale of its services through the unauthorized use of the HCA Marks, and such use has caused, and will likely continue to cause, confusion or mistake among prospective or actual customers in violation of § 32 of the Lanham Act.

69.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that

> [A]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . .

70.     After termination of the franchise, the acts of the SHCA Parties in marketing and promoting its business at all relevant times through and with the HCA Marks constitute:

a.      A false designation of origin;

18

b.    A false and misleading description of fact; and

c.    A false and misleading representation of fact; that caused, and will likely continue to cause, confusion, mistake, or deception as to the affiliation of the SHCA Parties with HCA, and which caused confusion, mistake, or deception, and will likely cause confusion, mistake or deception, all in violation of Section 43(a) of the Lanham Act.

71.    The SHCA Parties' acts of infringement in violation of §§ 32, 43(a), and 43(c) of the Lanham Act were malicious, fraudulent, willful, and deliberate.

72.    The SHCA Parties' acts of infringement, which continues to persist, in violation of §§ 32, 43(a), and 43(c) of the Lanham Act is malicious, fraudulent, willful, and deliberate.

73.    The SHCA Parties' acts of infringement, in violation of §§ 32, and 43(a) of the Lanham Act, have inflicted and continue to inflict irreparable harm on HCA.

74.    HCA has no adequate remedy at law.

75.    No previous injunctive relief has been awarded with respect to the SHCA Parties in this case or any other case.

## COUNT III- LANHAM ACT VIOLATIONS
### (USE OF COUNTERFEIT TRADEMARKS)

76.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

77.     The SHCA Parties' unauthorized use of the HCA Marks after the FA was terminated constitutes use of a "counterfeit" mark, meaning "a spurious mark, which is identical with, or substantially indistinguishable from, a registered mark" under 15 U.S.C. §§ 1127 and 1116(d)(1)(B)(i).

78.     Some of the HCA Marks are registered on the U.S. Patent and Trademark Office's principal register for use on the same services for which the SHCA Parties use the marks.  15 U.S.C. § 1116(d)(1)(B)(i).

79.     Since the termination of the FA, the SHCA Parties were not authorized to use the HCA Marks at the time the services were produced and provided at the facilities by the Smiths.

80.     The SHCA Parties acted with knowledge that they did not have authority to use the HCA Marks after the FA was terminated, and they acted with the intent to use the HCA Marks, despite knowing they had no authority to do so.

81.     The SHCA Parties' knowing and intentional use of counterfeit marks caused, and will likely continue to cause, confusion for the public regarding the origin and source of the counterfeit marks, which entitles HCA to treble damages and attorneys' fees under 15 U.S.C. § 1117(a) and (b) ("three times such profits or

damages, whichever amount is greater, together with a reasonable attorney's fee . . .").

## COUNT IV – BREACH OF CONTRACT

82.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

83.     A valid agreement or agreements exist between HCA and the SHCA Parties.

84.     All conditions precedent to HCA's duty to perform were fulfilled and the SHCA Parties had no valid cause to violate the agreement(s).

85.     The SHCA Parties are in material violation of the agreement(s).  This includes material violation of the FA.

86.     Material breaches of the FA include failure to pay royalties, violation of a non-compete, unfairly competing with HCA, continuing use of the HCA Marks, and failing to abide by all of the requirements of the FA upon termination of the franchise.

87.     HCA has been damaged due to the SHCA Parties' actions.

88.     Damages were a foreseeable consequence of the SHCA Parties' breach.

89.     As a result of the SHCA Parties' actions, HCA has been damaged in an amount to be determined by the Court.

## COUNT V – ACCOUNTING

90.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

91.     The SHCA Parties owed HCA a fiduciary duty to report all financial information regarding the franchise to HCA and to accurately pay HCA under the terms of the FA.

92.     The fiduciary relationship between HCA and the SHCA Parties was founded in trust and confidence.

93.     The SHCA Parties have a history of engaging in payment manipulation in order to avoid paying HCA the royalties it is due under the FA.

94.     The SHCA Parties have a duty to render an accounting to HCA to determine damages resulting from any misallocation of funds or purposeful manipulation.

95.     Upon information and belief, HCA has reason to believe that the SHCA Parties falsely reported (or failed to report) monthly revenues to HCA.

96.     Based upon the foregoing, HCA is entitled to an up-to-date accounting from the Smiths and damages.

## COUNT VI- UNJUST ENRICHMENT (ALTERNATIVELY)

97.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

98.     This claim is made in the alternative and as an alternative remedy in case the Court finds there is no express, written contract between the parties.

99.     A measurable benefit has been conferred upon the SHCA Parties.

100.    The SHCA Parties accepted and retained the benefit under circumstances where it would be inequitable for the SHCA Parties to retain the benefit without the payment of value for the same to HCA.

101.    HCA has been damaged due to the SHCA Parties' acts.

102.    Damages were a foreseeable consequence of the SHCA Parties' acts.

103.    As a result of the SHCA Parties' actions, HCA has been damaged in an amount to be determined by the Court.

**COUNT VII – MISAPPROPRIATION OF TRADE SECRETS (DTSA)**

104.    HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

105.    HCA is the owner of certain trade secrets as part of its business that are related to a service used in, or intended for use in, interstate or foreign commerce, including but not limited to market research, customer lists, customer and product pricing information, formulas, patterns, compilations, programs, devices, methods, techniques, products, systems, processes, designs, prototypes, procedures and computer programming instructions which are extremely confidential and derive independent economic value from not being generally

known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from their disclosure or use.

106.     The trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

107.     HCA took adequate measures and maintained the foregoing information and technology as trade secrets, which secrecy was guarded and not readily available to others.

108.     The SHCA Parties intentionally, and with reason to believe that their actions would cause injury to HCA, misappropriated and exploited the trade secret information through improper use and disclosure of the trade secrets for the SHCA Parties' own use and personal gain.

109.     The SHCA Parties are in violation of the Defend Trade Secrets Act of 2016 (Public Law 114-153).

110.     The misappropriation is wrongful because it was made in breach of an expressed or implied contract, or by one with a duty not to disclose the trade secret.

111.     The SHCA Parties misappropriated the trade secret information with willful, wanton, or reckless disregard of HCA's rights;

24

112.     As a result of the SHCA Parties' actions, HCA has been damaged in an amount to be determined by the Court. HCA is entitled to an award of damages or actual loss caused by the misappropriation of the trade secrets, damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss, or in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secrets;

113.     As the HCA's trade secrets have been willfully and maliciously misappropriated by the SHCA Parties, HCA is entitled to an award of exemplary damages in an amount not more than two (2) times the amount of the actual damages.

114.     HCA is entitled to injunctive relief against the SHCA Parties in order to prevent any actual or threatened misappropriation described herein. Such an injunction will not prevent any Defendant from entering into an employment relationship, and will not otherwise conflict with an applicable State law prohibiting restraints on the practice of a lawful profession, trade, or business.

**COUNT VIII – MISAPPROPRIATION OF TRADE SECRETS (ATSA)**

115.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

116.     The SHCA Parties are in violation of the Arkansas Trade Secrets Act (ATSA).  Ark. Code 4-75-601 *et seq*.

117.     The misappropriation is wrongful because it was made in breach of an expressed or implied contract, or by one with a duty not to disclose the trade secret information.

118.     HCA is entitled to injunctive relief against the SHCA Parties in order to prevent any actual or threatened misappropriation described herein.

119.     As a result of the SHCA Parties' actions, HCA has been damaged in an amount to be determined by the Court.

## COUNT IX – INTERFERENCE WITH CONTRACTUAL RELATIONS

120.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

121.     The SHCA Parties knew of the existence or had reason to know of the existence of contract(s) between HCA and third parties.

122.     The SHCA Parties, without justification, committed intentional acts intended or designed to disrupt the contractual relationship complained of hereinabove;

123.     The SHCA Parties' actions caused actual disruption of the contract; and as a result of the SHCA Parties' actions, HCA has been damaged in an amount to be determined by the Court.

## COUNT X – INJUNCTIVE RELIEF (AGAINST ALL DEFENDANTS)

124.     HCA repeats and makes a part hereof each and every allegation set forth in the preceding paragraphs of this Complaint.

125.     HCA is entitled to injunctive relief under § 20.4 of the FA and, as well as under the Defend Trade Secrets Act of 2016 and the Lanham Act.

126.     HCA seeks an injunction without bond against the SHCA Parties, and each of them, as follows:

  a.     Forbidding Defendants from using HCA's Marks;

  b.     Forbidding the SHCA Parties from using HCA's System, or any portion thereof;

  c.     Requiring specific performance of the obligations of the SHCA Parties upon termination of the FA;

  d.     Halting the transfer of all or substantially all of the SHCA Parties' assets, including customer lists;

  e.     Forbidding the SHCA Parties from using Proprietary and Confidential Information System Information;

  f.     Any and all breaches of the FA;

  g.     Forbidding the SHCA Parties from using any act or omission by Franchisee or Franchisee's employees that; (a) constitutes a violation of any Legal Requirement; (b) is dishonest or misleading to Customers of the Franchised

Business or other System Franchises; (c) constitutes a danger to the employees or Customers of the Franchised Business or to the public; or (d) may impair the good will associated with the Marks or the System;

       h.    Any violation of the SHCA Parties' non-competition covenants; and

       i.    All injunctive relief requested in the claims hereinabove.

### PRAYER FOR RELIEF

**WHEREFORE**, HCA prays for an award in its favor and against the SHCA Parties, and each of them, as follows:

A.    Preliminarily and permanently restraining and enjoining the SHCA Parties, their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from marketing, promoting, or selling services through and with the HCA Marks or using the HCA trade secrets or Confidential Information, and other injunctive relief as stated above;

B.    Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court deems just and proper;

C.   Entering judgment against the SHCA Parties and ordering payment of reasonable and just value for their use of the HCA Marks and System since the FA was terminated, and for such further or other relief as this Court deems just and proper;

D.   An order awarding HCA its attorney's fees and costs incurred pursuing this action;

E.   An order awarding HCA enhanced, punitive or exemplary damages including costs and attorney's fees; and

F.   An order awarding such further or other relief that this Court deems just and proper.

Respectfully submitted,

HYDEN, MIRON & FOSTER, PLLC

Dated: <u>December 9, 2016</u>

By: _____
   Steven Napper (AR Bar No. 75096)
   200 Louisiana Street
   Little Rock, Arkansas 72201
   Phone: (501) 376-8222 | Fax: (501) 376-7047
   Email: Steve.Napper@HMFLaw.net

HOWARD & HOWARD ATTORNEYS PLLC
By:   Dean W. Amburn (MI Bar No. P46427;
      *Pro Hac Vice* Pending)
   450 West Fourth Street
   Royal Oak, Michigan 48067-2557
   Phone: (248) 645-1483 | Fax: (248) 723-1568
   Email: DAmburn@HowardandHoward.com

***Attorneys for Plaintiff***